*512
 
 MICHAEL E. KIRBY, Judge.
 

 I,In this consolidated workers’ compensation matter, the plaintiff, Mary A. Thonn (Ms. Thonn), appeals from a March 12, 2008 judgment of the Office of Workers’ Compensation Administration (OWCA), which modified a prior judgment and granted the defendant, Slidell Memorial Hospital (SMH), a credit for indemnity benefits previously paid. SMH answers the appeal, contending the modification of the June 29, 2007 judgment to award Ms. Thonn temporary total disability benefits was unwarranted.
 

 On October 18, 2000, Ms. Thonn, was injured in a work-related accident when she tripped over a box and fell to the ground. At the time, she was employed
 
 as
 
 an x-ray clerk by SMH. Initially, a dispute arose regarding the extent of Ms. Thonn’s injuries and whether SMH was entitled to have Ms. Thonn evaluated by a physician of its choice. On September 7, 2001, the parties entered into a consent judgment, agreeing that Ms. Thonn was entitled to reasonable and necessary medical treatment by Dr. James Butler, an orthopedic surgeon, for the injuries sustained in the accident, subject to the guidelines under the Louisiana Workers’ 12Compensation Act, La. R.S. 23:1021
 
 et seq.;
 
 SMH was entitled to have Ms. Thonn examined by an orthopedic surgeon of its choosing; and, Ms. Thonn was entitled to past disability benefits from the date of the injury through present and continuing until modified by the OWCA, subject to a credit for disability benefits paid and days actually worked.
 
 [1]
 

 On September 3, 2004, SMH filed form LDOL-WC 1008, a disputed claim for compensation, with the OWCA, contending that Ms. Thonn had reached maximum medical improvement (MMI); was capable of working and earning wages greater than ninety percent (90%) of her average weekly wage; and, had failed to cooperate with vocational rehabilitation.
 
 [2]
 
 On December 20, 2004, SMH filed a supplemental and amending form 1008, seeking a modification of the prior consent judgment to reflect a termination in Ms. Thonn’s disability benefits or, alternatively, a reduction of those benefits as a result of her failure to cooperate with vocational rehabilitation.
 

 On July 29, 2005, Ms. Thonn filed a cross claim, alleging that she was entitled to be evaluated by a neurosurgeon. SMH opposed the claim on the basis that Dr. Butler, Ms. Thonn’s orthopedic surgeon, had issued a report indicating that a neu-rosurgical evaluation was unnecessary. Meanwhile, Ms. Thonn had filed a disputed claim for compensation on August 9, 2006, alleging that the numbness in her leg (the result of her earlier work-related injury) caused her to fall while climbing stairs on November 3, 2005, thus aggravating her pre-existing back and |3knee injuries.
 
 [3]
 
 On October 18, 2006, SMH filed another disputed claim for compensation, alleging that Ms. Thonn had refused to submit to an examination by Dr. Butler, her treating orthopedic surgeon, and had not been seen by him in the past two years.
 
 [4]
 
 On October
 
 *513
 
 31, 2006, the OWCA ordered SMH to authorize a neurosurgical evaluation by Dr. Donald Dietze, Ms. Thonn’s choice of a neurosurgeon.
 

 Dr. Dietze examined Ms. Thonn on January 25, 2007, and again on February 19, 2007. In his January 25, 2007 report, Dr. Dietze deferred to Dr. Butler regarding the issues of whether Ms. Thonn had reached MMI and permanent work restrictions. In neither his January 25, 2007 report nor his February 19, 2007 report did Dr. Dietze indicate that Ms. Thonn was disabled from employment.
 

 Dr. Butler re-examined Ms. Thonn on February 6, 2007, and recommended that she undergo a repeat MRI. The second MRI, performed on February 13, 2007, indicated neither unfavorable progression of Ms. Thonn’s degenerative disc disease nor any recurrent disc protrusions.
 

 Following a trial on the merits but prior to the rendition of a judgment, Ms. Thonn was re-examined by Dr. Dietze several more times and underwent additional diagnostic tests. The OWCA rendered a judgment on June 29, 2007, modifying the prior consent judgment to provide that Ms. Thonn was no longer temporarily totally disabled as of March 31, 2003. The OWCA judge found that |4Ms. Thonn was unable to return to her former occupation and carried her initial burden of proof to obtain supplemental earnings benefits. However, the judge found that SMH carried its burden to defeat Ms. Thonn’s claim for supplemental earnings benefits (SEB) and identified several jobs pursuant to the criteria set forth in
 
 Banks v. Industrial Roofing & Sheet Metal Works Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551, 557.
 
 [5]
 
 The judge also found that Ms. Thonn failed to carry her burden of proving that she was incapable of earning 90% of her wages due to substantial pain or other cause. Nonetheless, the judge found that Ms. Thonn needed continuing medical treatment as a result of the work-related accident and that the treatments by her physicians, Dr. Butler and Dr. R. Vaclav Hamsa,
 
 [6]
 
 were reasonable and necessary.
 

 On August 6, 2007, Ms. Thonn filed a petition for modification and disputed claim for compensation, requesting the OWCA to modify the June 29, 2007 judgment to award her additional compensation benefits.
 
 [7]
 
 In support of her petition, Ms. Thonn submitted a letter dated July 20, 2007, from Dr. Dietze, which stated, in part, “Ms. Thonn is unable to work at this
 
 *514
 
 time, and it is doubtful that she will ever return to any form of gainful employment.”
 

 |r,SMH filed an exception of res judicata and an opposition to the petition for modification, arguing that Ms. Thonn’s claim was barred by res judicata and that no change in her condition occurred to warrant modifying the June 29, 2007 judgment. Alternatively, SMH argued that in the event the OWCA determined Ms. Thonn was disabled, SMH was entitled to a credit and/or offset against any award of future indemnity benefits in an amount equal to weekly indemnity benefits paid by SMH between September 3, 2004 and August 10, 2007.
 

 The OWCA conducted a trial on the merits on November 29, 2007. After submission of the case but prior to the rendition of a judgment, Ms. Thonn filed an exception of res judicata, arguing that SMH’s claim for any credit and/or offset was barred because it failed to raise that issue prior to the rendition of the June 29, 2007 judgment.
 
 [8]
 
 Following a brief hearing, the OWCA judge rendered a judgment on March 12, 2008, which denied both parties’ exceptions of res judicata; granted Ms. Thonn’s petition for modification, awarding her temporary total disability benefits from July 20, 2007 until no longer temporarily totally disabled; and, granted SMH a credit of $29,415.12, the amount of indemnity benefits paid to Ms. Thonn from September 3, 2004 through August 10, 2007.
 

 Before considering the issues raised by Ms. Thonn in her appeal brief, we will address the issues raised by SMH in its answer to the appeal. SMH contends that the trial court erred in denying its exception of res judicata, citing La. R.S. 23:1310.8 E.
 
 [9]
 
 Specifically, SMH contends that in the June 29, 2007 judgment, the 1 fiOWCA held that Ms. Thonn was no longer temporarily totally disabled as of March 31, 2003, and SMH had satisfied its burden to defeat Ms. Thonn’s claim for SEB, and, therefore, effectively denied her weekly indemnity benefits as of September 3, 2004. Because Ms. Thonn did not appeal the June 29, 2007 judgment, SMH argues that it is final and res judicata, barring her petition for modification. We disagree.
 

 La. R.S. 23:1310.8 provides, in pertinent part:
 

 A. (1) The power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified
 

 [[Image here]]
 

 B. Upon the application of any party in interest,
 
 on the ground of a change in conditions,
 
 the workers’ compensation judge may, after a contradictory hearing, review any award, and on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers’ Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.
 

 (Emphasis added). The Louisiana Supreme Court, in
 
 Jackson v. Iberia Parish
 
 
 *515
 

 Government,
 
 98-1810, p. 10 (La.4/16/99), 732 So.2d 517, 525, concluded that the legislature, by enacting R.S. 23:1310.8 B, has taken affirmative steps to provide claimants with a cause of action to modify a prior award of compensation due to an alleged change in condition. With that in mind and considering the fact that Ms. Thonn was still receiving workers’ compensation benefits pursuant to the consent | judgment when she filed her petition to modify the June 29, 2007 judgment, we find her petition is not barred by res judi-cata.
 
 [10]
 

 Next we consider the other issue raised by SMH, i.e., whether Ms. Thonn satisfied her burden of proving at trial a change in condition to warrant a modification of the June 29, 2007 judgment. SMH contends that no significant change occurred in Ms. Thonn’s condition between June 29, 2007 and August 3, 2007, the date she filed the petition to modify. SMH points out that Ms. Thonn’s testimony at the November 29, 2007 trial that she was experiencing severe back pain and pain radiating into her legs were the same complaints made by her at the earlier trial and deposition. SMH further argues that the diagnosis set forth in Dr. Dietze’s July 20, 2007 letter did not differ significantly from his earlier diagnosis.
 

 Ms. Thonn, on the other hand, argues that Dr. Dietze’s diagnosis at the March 2, 2007 trial, in which he expressed no opinion as to her disability, was based on an incomplete evaluation, as he was still awaiting further medical records from Dr. Butler. Without her full medical records, Ms. Thonn contends, Dr. Dietze deferred to Dr. Butler on the issues of disability and work restrictions in his January 25, 2007 and February 19, 2007 reports. Ms. Thonn points out, however, that after the initial trial Dr. Dietze treated her on several occasions between March 5, 2007 and July 20, 2007. Following these visits, Dr. Dietze completed his evaluation and determined that she was disabled and would likely be unable to return to any form of gainful employment, as evidenced by his July 20, 2007 letter. Ms. Thonn also notes that the statutory language “on the ground of a change in conditions” is broad and does not necessarily limit the requisite change in |sconditions to a physical change in a claimant’s condition, citing
 
 Truitt v. Temp Staffers,
 
 2004-0590, p. 13 (La.App. 1 Cir. 4/6/05), 915 So.2d 786, 794 and
 
 Crister v. Dillard’s Department Stores, Inc.,
 
 99-3113, p. 5 (La.App. 1 Cir. 2/16/01), 791 So.2d 702, 706. Nonetheless, Ms. Thonn contends that Dr. Dietze’s later diagnosis along with her complaint of increasing back pain constitute the change in conditions to warrant a modification of the June 29, 2007 judgment.
 

 “Factual finding in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review.”
 
 Degrasse v. Elevating Boats, Inc.,
 
 2002-2370, p. 2 (La.App. 4 Cir. 6/11/03), 850 So.2d 40, 43,
 
 citing Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous.
 
 Degrasse,
 
 2002-2370, pp. 2-3, 850 So.2d at 43. If a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was
 
 *516
 
 clearly wrong.
 
 Id., citing Stobart v. State, through Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993).
 

 Because Ms. Thonn filed the petition to modify pursuant to La. R.S. 23:1310.8 B, she had the burden of proving by a preponderance of the evidence a change of condition and its causal relation with the employment accident.
 
 Amar v. Industrial Safety and Health (I.S.H.),
 
 2001-0772, p. 5 (La.App. 4 Cir. 1/2/02), 805 So.2d 439, 441. The evidence in the record includes Ms. Thonn’s medical records and reports from Drs. Hamsa, Butler and Dietze. In his January 25, 2007 report Dr. Dietze stated:
 

 |9... I need to review and compare an updated MRI scan with contrast and the urology medical records. I also need Dr. Butler’s medical records.
 

 I defer any causation determination to Dr. Butler, her treating physician at the time on the work injury. I defer any determination of MMI, permanent work restrictions or permanent impairment rating before today to Dr. Butler.
 

 He then enumerated the course of action for future treatment, which included having Ms. Thonn undergo another MRI of the lumbar spine and flexion and extension lumbar spine x-rays. Ms. Thonn underwent another MRI on February 13, 2007. Although Dr. Dietze’s report of February 19, 2007 indicated that the results of the February 13th MRI showed no significant change in Ms. Thonn’s physical condition, the report did indicate that Dr. Dietze was still waiting on her medical records from both Dr. Butler and her treating urologist.
 

 After the initial trial on March 2, 2007, but before the OWCA rendered its June 29, 2007 judgment, Ms. Thonn saw Dr. Dietze on March 5, 2007. Dr. Dietze noted in his March 5, 2007 report that Ms. Thonn was still complaining of “low back pain with radiation to bilateral lower extremities” as well as a “balance problem” for which she had not been treated. Regarding a plan for future treatment, Dr. Dietze stated:
 

 Options were discussed with patient. Options include a trial of facet injections plus or minus a lumbar rhizotomy. If she does not achieve any significant relief with the facet injections, and depending on her symptomology at the time, she may be a candidate for an epiduroscopy. If she does not wish to have a trial of the epiduroscopy or her back pain increases and she would like to proceed with surgical stabilization, she possibly will require a diskogram or by possible Dynesys at the juxtafusional level posterior fusion at the 5-1 level plus or minus hardware removal.
 
 We still have not received the notes from Dr. Butler, which we would like to have for evaluation. Patient still has not undergone a urological 11flevaluation. These recommendations remain the same.
 
 Flexion and extension views at today’s visit were reviewed by Dr. Dietze, and there was no significant change. We will see her back in six weeks or after the facet injections.
 

 (Emphasis added). Clearly, following the initial trial, but before the judgment was rendered, Dr. Dietze was still waiting to receive Dr. Butler’s medical report before completing his evaluation of Ms. Thonn.
 

 Dr. Dietze’s reports and Ms. Thonn’s testimony at the November 2007 trial indicate that Dr. Dietze had treated and examined Ms. Thonn on at least 8 occasions between March 5, 2007 and July 20, 2007. In addition to his July 20, 2007 letter opining that Ms. Thonn was unable to work, Dr. Dietze stated in his August 23, 2007 report that “Ms. Thonn is considered medically disabled and incapable of performing any full time work activity at any level at this time. Hopefully, with further
 
 *517
 
 treatment and surgery she will improve to a point that she may be able to participate in a sedentary or light duty work activity.” He opined that Ms. Thonn’s earlier back fusion had failed and noted that the lumbar facet injections and rhizotomy were unsuccessful.
 
 [11]
 
 Following office visits on September 20, 2007 and November 19, 2007, Dr. Dietze recommended that Ms. Thonn undergo further surgery.
 
 [12]
 

 After reviewing the evidence in this case, we find that Ms. Thonn proved by a preponderance of the evidence a change in conditions to warrant a modification of the June 29, 2007 judgment. Although SMH asserts that Dr. Dietze’s initial findings as to Ms. Thonn’s physical condition did not change in his July 20 2007 |nletter and later reports of March 5, August 23, September 20, and November 19, 2007, the evidence indicates that at the time of the initial trial Dr. Dietze had not expressed an independent, personal opinion as to Ms. Thonn’s disability and work limitations. Furthermore, the written reasons accompanying the June 29, 2007 judgment indicate that the OWCA judge had relied solely on the opinions of Drs. Butler and Hamsa, and not on Dr. Dietze’s findings, when she determined Ms. Thonn was no longer temporarily disabled and modified the then existing consent judgment. Also, the evidence demonstrates that at the initial trial Dr. Dietze’s findings regarding Ms. Thonn’s physical condition were based on an incomplete evaluation. Given Dr. Dietze’s later opinion that Ms. Thonn’s earlier lumbar fusion had failed and that she was disabled, unable to work and needed future surgery, we cannot say the trial court erred in finding Ms. Thonn was temporarily totally disabled and modifying the June 29, 2007 judgment to award her temporary total disability benefits.
 

 Now we address the assignment of error raised by Ms. Thonn in her appeal brief. She contends that the OWCA erred in awarding SMH an offset and/or credit pursuant to La. R.S. 23:1206
 
 [13]
 
 in the amount of $29,415.12 because it never raised the issue of a pre or post-judgment credit prior to the June 29, 2007 judgment becoming final and, therefore, the claim for such is barred by the doctrine of res judicata.
 

 |12In support of her argument, Ms. Thonn relies on the case of
 
 K-Mart Corporation, v. Malbrough,
 
 2004-2609 (La.App. 1 Cir. 12/22/05), 928 So.2d 133. In
 
 K-Mart,
 
 the employer filed a disputed claim for compensation contending that the claimant was no longer entitled to receive weekly indemnity benefits. At the time the disputed claim for compensation was filed, the employer was still paying benefits. However, after the employer learned that the claimant was, in fact, working, the employer terminated the claimant’s weekly indemnity benefits before the trial on the merits. At trial, the claimant was seeking the reinstatement of his temporary total
 
 *518
 
 disability benefits. The employer, however, never raised the issue that it was entitled to receive a credit for the benefits paid during the period the claimant was working for the other employer. After the OWCA rendered judgment reinstating the claimant’s benefits, the employer filed a second disputed claim for compensation seeking recovery and/or a credit for the benefits paid during the period the claimant was working for the other employer. The OWCA found that because the employer had knowledge prior to the trial that the claimant was working for the other employer and still failed to pursue a claim for the offset or credit, any claim it may have had for offset or credit for the benefits received prior to the original judgment was precluded by res judicata. The OWCA, however, granted the employer an offset for the overpayments made after the original judgment.
 

 The instant case is clearly distinguishable from the
 
 K-Mart
 
 case. Here, SMH had filed its disputed claim for compensation on September 3, 2004, seeking | ^modification of the earlier consent judgment. In the June 29, 2007 judgment, the OWCA held that Ms. Thonn was no longer temporarily disabled as of March 31, 2003. In light of the prior consent judgment, SMH continued to pay Ms. Thonn’s weekly indemnity benefits through August 10, 2007, the date the June 29, 2007 judgment became final. SMH had never terminated Ms. Thonn’s benefits before the June 29, 2007 judgment became final and Ms. Thonn was not seeking a reinstatement of benefits as part of that underlying action. Also, SMH was not seeking a credit against any obligation it may have had to pay benefits before the rendition of judgment; it was only seeking a credit or offset against any obligation to pay benefits it might have after the filing of Ms. Thonn’s petition for modification of the June 29, 2007 judgment. Thus, we find SMH’s claim for an offset and/or credit is not barred by res judicata.
 

 Moreover, at the trial on Ms. Thonn’s petition to modify the June 29, 2007 judgment, SMH offered into evidence a computer-generated printout of the indemnity payments made to Ms. Thonn from September 3, 2004 through August 10, 2007; the payments totaled $29,415.12. Ms. Thonn did not dispute this evidence. Thus, we find the OWCA judge did not err in determining SMH was entitled to a credit in the amount of $29,415.12 for the indemnity benefits paid from September 3, 2004 through August 10, 2007.
 

 Accordingly, for the reasons set forth above, the judgment of the OWCA is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The case heading of the consent judgment bears OWCA docket number 01-01673.
 

 [2]
 

 . SMH’s disputed claim for compensation filed on September 3, 2004 was designated as OWCA docket number 04-06637.
 

 [3]
 

 . Although the form 1008 completed by Ms. Thonn specifically referenced the prior OWCA docket numbers 01-01673 and 04-06637, the OWCA designated her August 9, 2006 claim as OWCA docket number 06-05405. On September 7, 2006, the OWCA judge ordered the consolidation of OWCA docket numbers 06-05404 and 04-06637.
 

 [4]
 

 .The OWCA designated SMH's October 18, 2006 disputed claim for compensation as OWCA docket number 06-07459. On Janu
 
 *513
 
 ary 3, 2007, the OWCA judge ordered the consolidation of OWCA docket numbers 06-07459, 06-05404 and 04-06637.
 

 [5]
 

 . Banks
 
 presented the issue of whether the employer had established job availability for purposes of proving an employee’s earning capacity. The Supreme Court concluded that an employer may discharge its burden of proving job availability by establishing by competent evidence, at a minimum, the following:
 

 (1) the existence of a suitable job within claimant’s physical capabilities and within claimant's or the employer's community or reasonable geographic region;
 

 (2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
 

 (3)an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
 

 [6]
 

 . The evidence in the record indicates that Dr. Butler had referred Ms. Thonn to Dr. Hamsa at the Metairie Orthopaedic Clinic, LLC, for pain management treatment.
 

 [7]
 

 . The OWCA designated Ms. Thonn’s August 6, 2007 petition for modification and disputed claim for compensation as OWCA docket number 07-06069. On November 29, 2007, the OWCA judge ordered the consolidation of OWCA docket numbers 07-06069, 06-05405, 06-07459 and 04-06637.
 

 [8]
 

 . The filing of the exception of res judicata by Ms. Thonn was timely. See La. C.C.P. art. 928 B.
 

 [9]
 

 . La. R.S. 23:1310.8 E, provides, "[a] judgment denying benefits is res judicata after the Claimant has exhausted his rights of appeal.”
 

 [10]
 

 . Ms. Thonn received indemnity benefits through August 10, 2007, the date the June 29, 2007 judgment, modifying the consent judgment, became final.
 

 [11]
 

 . Ms. Thonn received the lumbar facet injections and underwent the rhizotomy as part of her pain management treatment. A rhizoto-my is the surgical division of the anterior and posterior nerve roots.
 

 [12]
 

 . Specifically, Dr. Dietze recommended that Ms. Thonn undergo a L3-4 decompressive laminectomy and exploration of L4-5 fusion with possible revision fusion and removal of hardware at L3-5 posterior dynamic spinal stabilization.
 

 [13]
 

 .La. R.S. 23:1206 provides:
 

 Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.